[Civ. No. 2521. Third Appellate District.—October 19, 1922.]

K. SHIMIZU, Respondent, v. N. NOJIRI, etc., Appellant.

[1] CONTRACTS—SALE OF CELERY—PRICE—ORAL MODIFICATION.—Where
a written contract for the sale and purchase of celery does not
fix the price to be paid, but thereafter the parties orally agree
that the celery shall be shipped to the buyer on consignment to be
sold on commission, that oral agreement, when fully performed,
whether it be considered as a modification of the written contract,
a substitution therefor, or a method agreed upon by the parties for
determining the price to be paid, is valid and binding upon the
seller.

[2] ID.—SHIPMENT ON CONSIGNMENT—RECEIPTS AND DISBURSEMENTS—
EVIDENCE.—The seller having brought suit to recover a balance
alleged to be due from the buyer, and the latter having pleaded as
a defense the subsequent executed oral agreement to ship on con-
signment, the trial court committed error in sustaining objections
to evidence offered to show the amounts received for the celery
sold and the amounts properly expended in marketing the same.

APPEAL from a judgment of the Superior Court of
Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Appellant.

Robert H. Schwab for Respondent.

FINCH, P. J.—The complaint alleges that the defendant
became indebted to the plaintiff in the sum of $7,750.35 for
goods sold and delivered; that the defendant had paid $3,000
on account, and prayed for judgment in the sum of
$4,750.35, the alleged balance remaining unpaid. The answer
denies the allegations of the complaint and avers that the
cause of action set forth in the complaint arose out of an
alleged sale of celery; that the celery was not sold to the
defendant but that "the only celery handled by the defend-
ant for the plaintiff was on consignment and not by way of
purchase"; that the plaintiff delivered to the defendant 4618

---

1.  Effect on contract for sale of chattel of failure to fix price,
note, **Ann. Cas.** 1912B, 359.

crates of celery "on consignment to be sold on account of plaintiff on commission"; that "the defendant sold the said celery for the plaintiff on commission and the net proceeds thereof, after deducting freight and commission, aggregated the sum of $1311"; that the defendant paid in the plaintiff's behalf for labor, materials, and cash advanced the sum of $6,819.19. The same facts were alleged by way of cross-complaint and the defendant prayed for judgment for the difference between the alleged amount paid out for the plaintiff and the net receipts from the sale of the celery. Verdict and judgment went for plaintiff in the sum demanded in the complaint.

There was admitted in evidence an agreement between the parties, dated January 24, 1920, containing the following provisions: "That the buyer hereby agrees to buy and does buy from the seller, who hereby agrees to sell and does sell to the buyer the seller's entire crop of golden yellow celery, estimated to be approximately 20 acres grown upon the land situated in Sacramento Township, State of California, during the entire season of 1920 and 1921. . . . Until the complete delivery of the entire crop . . . the seller . . . agrees to assume all risks of injury to or the loss of the above mentioned crop, and further agrees to pick carefully all of said crop . . . at such time as may be designated by the said buyer, and before the 15th day of February, 1921, at his entire expense, and the above said buyer agrees to pay for the above mentioned crop on delivery at car door or platform in Sacramento City or loading station. . . . It is further agreed by both the buyer and seller that all the above crop is to be of merchantable quality and suitable for eastern shipments, free of all defects, and subject to the inspection of the said buyer who will have the right and authority to reject or accept the above crop or any part thereof. . . . This contract is hereby agreed to by both buyer and seller to pass title and constitute an absolute sale of the above crop and that no other agreement or understanding be necessary or shall in any way modify this contract, and that the money paid as part payment on this contract is to be credited when final settlement is made." The contract is silent as to the price to be paid for the celery.

Plaintiff testified that the agreement was executed on the day it bears date; that after it was signed the defendant

suggested that the price to be paid for the celery be inserted in the agreement but that plaintiff said he wanted the daily Sacramento market price prevailing at the time deliveries were made, to which defendant orally agreed; that early in November, immediately prior to the first shipment, the parties orally agreed upon a price of two dollars a crate and that eight carloads were delivered pursuant to that understanding; that thereafter, on account of a weak market, shipments were discontinued for a time; that prior to the resumption of shipments, the parties agreed upon a price of thirty-five cents a dozen for the remainder of the celery and it was delivered under that agreement.

The defendant testified that early in the year 1920 the plaintiff asked the defendant to handle the former's crop of celery and that defendant replied that he would do so, but that there was at that time no agreement made as to a sale or the terms on which the crop would be handled; that the written agreement was executed in June, at plaintiff's request, for the purpose of showing the men working for him that he had a contract for the sale of his crop; that the defendant did not have any marketing forms at the time and therefore "used that grapevine contract"; that in August plaintiff asked three dollars a crate net for the celery and defendant made inquiries personally, by telephone and telegraph in an effort to find a buyer at that price but without success; that plaintiff later reduced the price to two dollars and the defendant agreed to endeavor to market the celery at that price, but at no time agreed to pay two dollars a crate, or any other price therefor; that the defendant told plaintiff he would handle it for plaintiff's account; that after eight cars had been shipped he advised plaintiff not to ship any more until the market improved, that there was no demand for the celery at that time; that later the plaintiff asked him to market the remainder of the crop and defendant replied that there was no market in the east for it, but that he was willing to handle it for plaintiff; that the parties then agreed that the defendant should offer the celery at thirty-five cents a dozen; that thereupon shipments were resumed; that, after all the celery in controversy had been shipped, the plaintiff requested a loan of money from defendant and, upon defendant replying that no returns had been coming in and that he could not pay him, plaintiff for the

first time made the claim that the celery had been sold to defendant. At the request of defendant's counsel the plaintiff produced receipts given him for all deliveries made to defendant. They are all alike except as to dates and quantities. The following is a copy of one of them:

"Consigned Growers Receipt, No. 12307.

"Cal., Nov. 9, 1920.

"Received from K. Shimizu, Grower, 160 crates of celery, P. F. E. 3878. Notice. This receipt is issued to the grower for fruit delivered to N. Nojiri Fruit Company to be handled on consignment for his account.

"N. Nojiri Fruit Company."

The plaintiff testified that he could not read English and did not read any of the receipts, though he did not say that he did not know the contents thereof.

The written agreement shows that the celery was intended for the eastern market. The plaintiff made no attempt to prove the market value of the celery, relying entirely on his own testimony to establish oral agreements fixing the prices to be paid. Uncontradicted testimony produced by defendant shows that white celery is sold in the local markets and that there was no cash market value in Sacramento for golden yellow celery while deliveries were being made; that as a rule celery is not sold for cash in Sacramento, but that it is turned over by the growers to various marketing organizations on consignment and that they sell it to the eastern trade at a "price subject to inspection and acceptance upon arrival." On cross-examination the plaintiff said that some "fellow" told him that the market price of celery was two dollars a crate about the time of the first delivery. It does not appear whether such price was for white or yellow celery. It may fairly be said that there is no substantial evidence establishing the market price of celery at the times deliveries were made. The plaintiff's case, therefore, rested entirely upon his testimony to the effect that prices had been fixed by agreement of the parties. Such testimony was squarely contradicted by the defendant. The defendant further testified that the parties agreed orally upon a sale on commission. Such testimony is corroborated by the receipts given by defendant and accepted by the plaintiff, reciting that all shipments of celery were delivered to defendant "to be handled on consignment" for plaintiff's

account. If the allegations of defendant's answer, which he was not permitted to prove, are true, then he had paid plaintiff more than was due him for his crop of celery, and it follows that all the terms of the oral agreement to ship on consignment had been fully performed. [1] Such executed oral agreement, if made, whether considered as a modification of the written contract, a substitution therefor, or a method agreed upon by the parties for determining the price to be paid, was valid and binding upon the plaintiff. [2] The defendant offered evidence to show the amounts received by him for the celery sold and the amounts properly expended by him in marketing the same. The court sustained plaintiff's objections to the admission of such evidence. It seems clear that such rulings were erroneous and highly prejudicial. It may be true that, if such evidence had been admitted, the jury would have believed plaintiff's testimony rather than that of defendant, but the defendant had the right to introduce the evidence and have the jury pass upon it. If the evidence thus excluded be true, then the moneys expended by the defendant in marketing the celery, together with the advances made to plaintiff, exceeded the total receipts from all celery sold, and the defendant was entitled to judgment against the plaintiff. The other errors complained of, in so far as they have merit, are similar to that considered and no useful purpose would be subserved by a detailed discussion thereof, as it is not probable that they will be repeated at the retrial of the case.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 18, 1922, and the following opinion then rendered thereon:

THE COURT.—The respondent states in his petition for a rehearing that the defendant never contended that the written contract between the parties had been modified by an executed oral agreement and that there is no evidence of such modification.

At page 21 of the reporter's transcript appears the following statement, made by counsel for defendant during

the progress of the trial: "The question before the jury will be whether or not this first contract was made, and, if it was made, whether the parties acted under a separate agreement, because of the condition of the market—abandoned and handled this celery wholly on a commission basis. And if the contract was made and abandoned, the question is, what was the market price of the celery." The court said: "Any subsequent agreement showing the price will be admissible." Again (page 53), counsel for defendant said: "I wish to call your honor's attention to the fact that the evidence shows that . . . he [defendant] told the plaintiff that he would . . . ship this celery for him and would try to get him two dollars per crate; that the celery was shipped; that presents the matter of an executed oral contract. . . . If that be true, then the matter comes within the abandonment of the contract, it is for the jury to determine whether or not they abandoned the other contract. It seems to me it is wholly up to the jury to determine."

The defendant testified that a few days prior to the first shipment the plaintiff said "he wanted to market his celery. . . . I asked him: 'What price do you want for it?' I think he said he wanted to get two dollars net to him. I told him that I will try to get, see if I can get, try to get that market price for him"; that he never promised to pay two dollars a crate for the celery; that he told plaintiff at that time that he would try to find a market for him, that he would handle the celery for plaintiff's account. After the shipment of eight carloads, the defendant advised plaintiff not to make further shipments until the market improved. The defendant testified that some days later the plaintiff said he desired to make further shipments of two cars a day and "I told him if he wanted me to market them, I was willing to handle them for him. . . . He asked me how much, what price will be. I told him I will offer it thirty-five cents a dozen, just offer, is not sale—quotation, just quotation," and that the plaintiff agreed to it. As stated in the opinion, plaintiff accepted receipts for all shipments as made, reciting that the celery was "to be handled on consignment for his [plaintiff's] account." The defendant had advanced to plaintiff more than the net receipts for all the celery, according to the facts which defendant attempted to prove. and hence the oral agreement, made subsequent to the written

contract, had been fully executed. The foregoing evidence was sufficient, if believed by the jury, to show an abandonment of the written contract and the substitution of an oral agreement in its stead. The written contract is silent as to the price to be paid for the celery. Plaintiff testified that it was orally agreed at the time of its execution that he was to receive the daily market price at the time of the shipments. Respondent admits in his petition that there is no substantial evidence showing the market price. Defendant produced evidence to the effect that there was no market for yellow celery. It was necessary, therefore, to determine the price to which plaintiff was entitled from evidence of the later agreements and understandings of the parties. Each party was entitled to produce evidence bearing upon that question. Having produced evidence from which the jury would have been warranted in finding that the parties had agreed, prior to the deliveries of the celery, that the same should be shipped on a commission basis and that it was so shipped, the defendant should have been permitted to prove the net returns from such shipments.

The petition for a rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1922.

All the Justices present concurred.